John W. CLARK, II, and Roslyn
A. Clark, Plaintiffs,

v.

ORKIN EXTERMINATING
COMPANY, INC.,
Defendant.

No. 5:00CV00022.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

May 16, 2001.

Edward Morton Burns, II, Waynesboro, VA, for Plaintiff.

John Mason Claytor, David Patrick Corrigan, Glen A. Lea, Harmon, Claytor, Corrigan & Wellman, Richmond, VA, Joseph C. Winner, McFadden, Winner and Savage, Columbus, OH, for Defendant.

### MEMORANDUM OPINION

KISER, Senior District Judge.

*Background and Facts*

In spring of 1989, Plaintiffs John W. Clark, II, and Roslyn Clark ("Plaintiffs") executed a Subterranean Termite Agreement ("Agreement") with Defendant Orkin Exterminating Company ("Orkin"). This Agreement called for Orkin to inspect, evaluate, and treat as necessary Plaintiffs' home. Plaintiffs paid $1,192.00 for the initial treatment, and have continued to make timely annual renewal payments to keep the Agreement in force to this very date.

Typically, termite prevention techniques call for the placement of a chemical barrier between a house's foundation and the earth. The peculiar construction of Plaintiffs' house caused Orkin to modify the guarantee it offered to Plaintiffs, however. Plaintiffs' house is built partially over a slab foundation (by placing a wood floor on top of a concrete garage floor) and partially over a basement foundation, making part of Plaintiffs' residence inaccessible for inspection. As a result, the Agreement between Plaintiffs and Orkin specified a "Lifetime Renewable Subterranean Termite Re–Treatment Guarantee (LC)" ("Limited Guarantee") under the heading of the "Orkin Continuous Protection Guarantee." Orkin's Charlottesville office was responsible for Plaintiffs' account between 1989—December 1999, and Orkin's Roanoke office has been responsible since.

Since 1989, Orkin conducted periodic follow-up inspections and re-treatments of the residence with commonly-used termiticides. The assortment of different Orkin employees always used the same chemical, Dragnet; such a course of treatment was, not surprisingly, ineffective. In 1993, Orkin asked Plaintiffs to remove various coverings (i.e., ceiling covering, floor covering, etc.) from the converted garage-guest bedroom; Plaintiffs employed a contractor to do so and found termites swarming everywhere. In 1997, Plaintiffs again found significant termite damage and were forced to replace various parts of an upstairs bathroom at a cost of $5,000.00. Apparently, the earlier treatments only led to the termites moving around the house. After Plaintiffs' lawyer sent a letter to Orkin, Orkin sent a branch manager to supervise treatment personally.[1]

Nevertheless, in June 1999, Orkin supplemented the chemical barrier strategy with bait/monitoring stations. This change of treatment apparently occurred because the Charlottesville manager was served with a copy of Plaintiffs' legal claim and

---

1. This action too points up a violation of company policy, as Orkin policy calls for manager inspection after third retreatment, which occurred in 1995.

realized that the previous treatment was not long enough to be effective. In September 1999, the Charlottesville office was closed.

During these events, it is interesting to note the repeated violations of Orkin's business procedures that occurred with regards to Orkin's conduct towards Plaintiffs. For instance, all Orkin records prior to March 1998 regarding Plaintiffs disappeared, despite a company policy of saving all records for seven years. Moreover, there is no *ex ante* indication why the Limited Guarantee was applied, since no diagrams of the infestation or damage were attached, contrary to Orkin procedures. Similarly, numerous termite retreatment reports omitted also descriptions and diagrams that Orkin policy requires (i.e., conditions requiring treatment, location of infestation, location of termiticide applied, or diagrams illustrating such). Another odd fact is that, with one exception, different personnel treated Plaintiffs home on each occasion, despite the fact that the Charlottesville office contained only three field employees. These factors combine to produce a situation where Orkin's employees were continually inspecting and treating Plaintiffs' home with no prior knowledge of the house and minimal, if any, records.

Given these events, Plaintiffs now bring suit arising from damage to their house by termites. They assert that Orkin employees repeatedly assured them that the treatments were efficacious and would rid their house of any termite infestation. Moreover, Plaintiffs contend that Orkin did not follow several industry guidelines and employed inexperienced technicians, and that this negligence is the reason for unsuccessful treatments over the past eleven years.

Interestingly, however, while Plaintiffs state that they had no alternative but to continue with Orkin treatment, I note that their contract with Orkin is renewable *annually*. Moreover, while Plaintiff's expert report identifying the problems was produced in 1998, Plaintiffs never hired him or one of Orkin's competitors to provide proper treatment in the intervening time. Instead, Plaintiffs simply renewed their Agreement with Orkin in the spring of 1999 and again in the spring of 2000, so that they remain a faithfully paying Orkin customer in good standing.

Defendant now brings both a Motion for Summary Judgment on all three counts contained in the Complaint and an appeal of a Magistrate ruling allowing Plaintiffs to add a fourth count. Counts I and II of the Complaint allege breach of contract and breach of implied warranty, requesting $500,000 in compensatory damages. Count III alleges a negligence claim and requests $500,000 in compensatory damages. Proposed Count IV, which Magistrate Judge Waugh B. Crigler allowed to be added to the Complaint, adds a claim under the Virginia Consumer Protection Act, Va.Code § 59.1–198.

For the reasons stated below, I deny Orkin's Motion to Summary Judgment as to Count II, grant the Motion for Summary Judgment on Counts I and III, and grant their appeal of the Magistrate's ruling on Plaintiff's Motion to Amend. As such, Plaintiffs' action is reduced to consisting of solely Count II (implied warranty claim), the only issue that will proceed to trial.

*Legal Standard*

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994); *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir.1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, then no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### Discussion

*Motion for Summary Judgment on Counts I (Breach of Contract) and Count II (Breach of Implied Warranty)*

■ Orkin contends that the terms of the contract preclude Plaintiffs from recovery of damages in either the breach of contract or the breach of implied warranty claims (Count I and II). Under this view, a strict view of the contract, the black-letter terms would be enforced. *Carter v. Carter,* 202 Va. 892, 896, 121 S.E.2d 482 (1961); *accord Sully Station II Comm. Ass'n, Inc. v. Dye,* 259 Va. 282, 525 S.E.2d 555 (2000); *Norfolk and Western Ry. v. Accident Cas. Ins. Co.,* 41 F.3d 928 (4th Cir.1994).

This rigid type of approach has previously been applied by courts facing similar issues and this same defendant. In *Harmon v. Orkin Exterminating Co.,* 794 F.Supp. 589 (W.D.Va.1992), plaintiffs sought to recover for termite damage after Orkin treatment. Reviewing the terms of the Limited Guarantee, the *Harmon* court ruled: "the court [has] little choice but to grant the [Orkin] Motion for summary judgment. The clear unambiguous language of the contract precludes the plaintiffs from recovering damages which they seek in the present action. The defendant is entitled to judgment as a matter of law ... so summary judgment will be granted." *Id.* at 590–91. Similarly, the court in *Clarkson v. Orkin Exterminating Co.,* 761 F.2d 189 (4th Cir.1985) found Orkin liable for breach of contract, but limited damages to the cost of obtaining service from another pest control operator.

I find this logic to be unescapable regarding Defendant's Motion for Summary Judgment on Count I, the breach of contract claim. Indeed, Orkin has not violated the letter of the contract: Orkin has made extensive retreatments, as is mandated under the Limited Guarantee. Because the terms of the contract are clear and unambiguous and because Orkin has complied with those terms, I grant Defendant's Motion for Summary Judgment as to Count I of Plaintiff's Complaint.

■ I am persuaded, however, by Plaintiff's argument that the terms of the contract do not immunize Orkin from liability in Count II, the breach of implied warranty claim. In adopting this view, I am struck by the manner in which the public policy undergirding other areas of Virginia law dovetail the matter. The VCPA, for instance, prevents firms from making contracts that are deceptive and unconscionable. Va.Code § 59.1–200(A). Similarly, the frustration of essential purpose doctrine, applicable to contracts for goods, provides that an exclusive remedy failing the contract's essential purpose must yield to other cures. *See Envirotech Corp. v. Halco Engineering, Inc.,* 234 Va. 583, 587, 364 S.E.2d 215 (1988). These doctrines provide evidence of the public policy against enforcing contractual provisions that immunize a party from making good on implied warranties.

It seems clear that obviating possible implied warranty claims with the terms of the Limited Guarantee in this case leaves consumers with no remedy when the original treatment and retreatments are unsuccessful. Such an immunization from liability for Orkin would hold even in absurd situations when the failure to rid termites is the exclusive fault of Orkin. For instance, if a treatment were ineffective due to Orkin's use of water as a termiticide, Orkin's view would provide the consumer with the sole remedy of repeated treatments with water. Such an interpretation dispels any hope for purchasers of obtaining meaningful relief for breaches of implied warranty. As one court noted in a case of similar facts,

> "A 'warranty' which provides that consumers' only remedy is a repeated application of termiticide, according to previously employed methods which had utterly failed to produce results, totally ignores the objective of the underlying transaction, that is, the elimination of the termite infestation in the consumer's home. Repeated diluvian drenchings of termiticide, as ineffective as they are copious, are of no benefit to the homeowner, and at worst mislead the homeowner into relying on Orkin's treatment in lieu of more effective remedies."

■ *Roelle v. Orkin*, 2000 WL 1664865, 2000 U.S. Dist. LEXIS 20259 (Ohio App. Dist. 10 11/7/2000).[2] Since such a "warranty" does not, in fact, provide the consumer with any sort of guarantee of service and instead only guarantees Orkin immunity from legal liability, I find that the retreatment guarantee cannot serve as a sufficient basis for granting summary judgment as to Count II. The issue of whether an implied warranty existed and whether Orkin breached that warranty are issues for the finder of fact to resolve, and thus summary judgment is inappropriate.

### Motion for Summary Judgment on Count III (Negligence)

■ Count III must be dismissed because Plaintiffs attempt to obtain damages for negligence based solely on a breach of contract action. Virginia law holds that duties arising from contracts, and not arising under common-law duties, must be remedied by the law of contracts. *Sensenbrenner v. Rust, Orling & Neale, Architects Inc.*, 236 Va. 419, 425, 374 S.E.2d 55 (1988). Indeed, a breach of contract and a tortious breach of duty claim can co-exist only if the duty tortiously or negligently breached had an basis for existence, such as the common law, that is independent of contractual obligations. *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344 (1998) (citing *Spence v. Norfolk & W. R.R. Co.*, 92 Va. 102, 116, 22 S.E. 815 (1895)). I do not find that any such special relationship existed that would justify the creation of a duty by Orkin to the Clarks independent of the contract.

This approach was adopted in the recent *Wood v. Huff* case, 52 Va. Cir. 386 (Cir.Ct. 2000), where a home buyer brought suit against a pest control company for damage not revealed upon inspection. The *Wood* court's words are equally applicable to this matter: "Plaintiff claims compensation for economic or monetary losses she suffered because Defendants breached their contractual duty to her. Plaintiff's tort theory of recovery against Defendants ... violates Virginia's economic loss rule and pre-

---

**2.** Although I agree with the lack of precedential value of the *Roelle* case, an unpublished opinion in a foreign jurisdiction, *see* Reply Brief 2–3, I quote the eloquent language in that decision to buttress my interpretation of Virginia law as applied to the instant matter.

cludes recovery in tort against either of them." *Id.* at 388. Plaintiffs attempt to analogize this claim to other contractual matter where a party assumes an independent duty via the nature of the special relationship, such as a medical malpractice action. Yet, I find the legal precedent for such a novel approach is deficient. *Compare Wood v. Huff,* 52 Va. Cir. 386 *and Harmon v. Orkin Exterminating Co., Inc.,* 794 F.Supp. 589 (not allowing recovery in termite case beyond strict contractual terms) *with American Tel. & Tel. Co. v. Eastern Pay Phones, Inc.,* 767 F.Supp. 1335 (E.D.Va.1991) (finding duty created when special relationship between parties includes a monopoly market position); *Coyne & Delany Co. v. Selman,* 98 F.3d 1457 (4th Cir.1996) (finding tort liability for insurance professionals under Virginia law in case with oral contract); *Foreign Mission Bd. of Southern Baptist Convention v. Wade,* 242 Va. 234, 409 S.E.2d 144 (1991) (disallowing negligence claim of missionary against mission board when relationship was based on contract).

This matter is not one in which a special relationship existed between the parties that would enable the Plaintiffs to bypass Virginia's economic loss rule. As such, Plaintiffs are barred from transforming their contract action into a tort claim based solely on the underlying contractual duties. Since Count III fails as a matter of law, I grant Defendant's Motion for Summary Judgment on that claim.

*Appeal of Magistrate Ruling (Proposed Count IV, VCPA Claim)*

On April 3, 2001, Magistrate Judge Crigler granted Plaintiffs' Motion to Amend, allowing Plaintiffs to add a count in their Complaint under the Virginia Consumer Protection Act ("VCPA"), Va.Code § 59.1–

198. In general, leave to amend a Complaint is to "be granted freely when justice so requires." Fed.R.Civ.P. 15(a). Yet, Defendant appeals the Order allowing Plaintiffs to amend their complaint primarily on the ground that such a claim is futile because it is barred by the statute of limitations.[3]

The statute of limitations for claims under the VCPA arising prior to 1995 is one year, as is found in the catch-all provision of Va.Code § 8.01–230. Section 59.1–204(1)(A) limits the period for claims arising after 1995 under the VCPA to two years.

■ In this matter, Plaintiffs were aware of the Defendant's conduct and the resulting damages as of 1993 (the date when repairs were performed). Moreover, Plaintiffs have known of a better solution since the date of their own expert's report was prepared in 1998: that report noted the prevalent strategy of creating a "continuous, unbroken chemical barrier in the soil around all known potential termite entryways." Richard J. Daum Affidavit at 6. Yet, despite the actual notice provided by the 1993 incident and the diagnosis from Plaintiffs' expert in 1998, Plaintiffs simply continued to sign on with Orkin and let the termites eat away their house. Allowing Plaintiffs to bring suit now under the VCPA would eviscerate that statute's period of limitation. Indeed, under Plaintiff's theory, they could renew their contract with Orkin annually and bring suit in the year 2020. As such, I find that Plaintiffs' claim under the VCPA to be futile and dismiss the proposed Count IV as a matter of law.

### Conclusion

Defendant's Motion for Summary Judgment is granted as to Counts I and III of

---

**3.** Although Orkin had also objected to the amendment on the basis of the closeness of the trial date (May 15, 2001), both sides agreed and the Court allowed that date to be released during oral argument.

the Complaint and denied as to Count II. Moreover, Plaintiffs are barred from adding a claim under the VCPA by the statute of limitations. As such, the sole remaining count on which Plaintiffs may obtain relief is they claim under a breach of implied warranty theory.

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record, and to Plaintiffs.

### *ORDER*

Before the Court are Defendant's Motion to Release Trial Date [Document 23], Defendant's Motion for Summary Judgment on Counts I—III of Plaintiffs' Complaint [Document 15], and Defendant's Appeal of Magistrate Ruling [Document 21] allowing Plaintiffs to amend their complaint to add a fourth count, based on the Virginia Consumer Protection Act ("VCPA"), Va.Code § 59.1–198.

For the reasons stated during oral argument, Defendant's Motion to Release Trial Date is **GRANTED.** The parties are to contact the Court to arrange for another trial date in Fall 2001.

For the reasons stated in the attached Memorandum Opinion, Defendant's Motion for Summary Judgment as to Counts I and III is **GRANTED** and Defendant's Motion for Summary Judgment on Count II is **DENIED.**

As is also discussed in the attached Memorandum Opinion, I find the proposed addition of a claim under the VCPA to be futile. Defendant's Appeal of the Magistrate's Ruling thus is **GRANTED.** Overall, Plaintiffs' action is reduced to consisting of solely Count II (implied warranty claim), the only issue that will proceed to trial.

The Clerk is directed to send a certified copy of this Order to all counsel of record.