## CIRCUIT COURT OF THE CITY OF NORFOLK

Jeff E. Howie, III

v.

Atlantic Home Inspection, Inc.

June 17, 2003

Case No. (Law) CL02-379

BY JUDGE LYDIA CALVERT TAYLOR

Plaintiff Jeff E. Howie, III, sued the inspector he had hired to inspect the house he had contracted to purchase, claiming that the home inspection was negligent in that the inspector failed to discover foundational damage of the Florida Room and that the inspector's failure to properly inspect and report on the condition of the house constituted a breach of contract. Plaintiff also sued the inspector for breach of warranty, claiming that the inspector warranted that the house was in good structural condition despite the foundational damage under the Florida Room. Plaintiff seeks to recover $5,822.00, the cost of repair, plus attorney's fees, and court costs. Defendant Atlantic Home Inspection seeks to distinguish the cases cited by Plaintiff, arguing that Defendant is not liable under these facts, as well as maintaining that, if Defendant were otherwise liable, he had effectively limited his liability by the wording of the contract and/or report.

The case was tried to the Court, which found the facts of the case to be as follows. Plaintiff, an appraiser and a real estate broker for more than thirty years, entered into a contract to buy 124 East Severn Road, Norfolk, Virginia; the contract allowed Plaintiff to employ his own inspector to inspect the

condition of the property prior to the closing or completion of his purchase of that property.[1] Plaintiff hired Defendant to inspect the property on March 27, 2000, for which Plaintiff paid $195.00.[2] Two days later, on March 29, 2000, Defendant inspected the property. His written report of the inspection failed to reflect any problems in the foundation of the Florida Room addition. After buying the property and moving in,[3] Plaintiff began to notice problems with the Florida Room, including cracks in the brick skirt and in the interior walls of that room. He consulted with a contractor, who stated that the foundation of the Florida Room was inadequate. Plaintiff, who filed suit against Defendant inspector, claims that such problems with the foundation should have been apparent during Defendant's inspection of the property had Defendant not failed "to perform the inspection with the standard of care required of home inspectors" and provided false representations and warranties about the condition of the Florida Room. The Court's initial finding was that the deficiencies in the Florida Room foundation were such that a reasonably competent home inspector, meeting the standard of care in Virginia for home inspectors, should have seen and reported those deficiencies in his report.

---

[1] Plaintiff said the inspector was selected from the yellow pages. Why Plaintiff, a real estate broker, and Stacy Goode, an experienced local realtor, did not know an inspector they had used on other occasions or check on the name of a well-regarded inspector with other agents or appraisers was never made clear to the Court.

[2] Roddy Renn, owner of Defendant Atlantic Home Inspection, testified at trial that Stacy Goode, a real estate agent, contacted the Defendant to set a time, place, and date for the inspection. Stacy Goode also signed Defendant's written report. It is unclear whether Stacy Goode was the real estate agent for the buyer or the seller. However, Plaintiff conceded in his pleadings, and no one disputed, that "*Plaintiff* retained the Defendant to perform an inspection of the physical condition of the property" and that "Defendant provided to [*him*] a written report of the inspection dated March 29, 2000." *Am. Mot. for J.*, ¶¶ 3-4 (emphasis added). Plaintiff also provided the Court with the cancelled check with which he paid Defendant to inspect the house. Therefore, through his pleadings and exhibits, Plaintiff admits that Stacy Goode served as his agent when she scheduled the inspection and signed the report.

[3] Plaintiff acknowledged that he saw and read the Defendant's limitations on liability at which point he had time to hire another inspector (and even presumably stop payment to the first inspector) before the closing on the house. He was not concerned and did not do so, however, because he assumed the report was correct. Thus, his own testimony belies any claim that he relied on the belief that he could, in fact, recover the cost of repairs were the report to prove to be inaccurate in any respect after the purchase.

However, that left two issues to resolve: whether the inspector was liable to the buyer, and, if so, had he effectively limited his liability by the disclaimers in the inspection contract.

## Defendant's Liability

Plaintiff Howie first cites *Baird v. Dodson Brothers Exterminating Co.*, 217 Va. 745 (1977), for the proposition that he should be able to recover on these facts. In *Baird*, the plaintiff hired a termite inspection company to inspect the home in which he had resided for twenty-two years. *Id.* at 746. When the company's representative discovered termite damage in the dining room, the plaintiff entered into an agreement with the company to treat the plaintiff's home for termites. Pursuant to the contract, the company promised to treat the home for subterranean termites and powder post beetles and to reinspect the home once a year, providing any retreatment necessary. *Id.* The contract specifically disclaimed liability for all "damages except those due to its 'neglect'."[4] *Id.* The inspection report stated that the company decided not to use powder post beetle spray. Subsequently, when the plaintiff experienced severe problems with his home and called the company, the company refused to return the plaintiff's phone calls until the plaintiff's attorney called the company. *Baird*, 217 Va. at 747. By the time the company retreated the home, extensive damage to the house had already occurred. *Id.* at 748. The Virginia Supreme Court in *Baird* held that "mere inspection, however casual or cursory and ineffectual to disclose obvious damage, [does not] insulate [the company] from liability." *Id.* at 749. If mere inspection insulated the company from liability, "[it] would reward inaction or negligent performance by [the company], and would defeat the purpose of the contract to protect Baird's residence from further insect damage." *Id.*

However, this Court finds that *Baird* is distinguishable in several ways from this case. First, in *Baird*, the plaintiff owned the residence already, in which he had resided for twenty-two years before having a termite inspection done. Here, Plaintiff did not yet own and had never lived in the residence. Second, the contract in the case at bar only required that Defendant inspect the home once; it did not require any ongoing inspections, nor, importantly, any retreatment or repair, in contrast to *Baird*. Third, the inspection in this case

---

[4] This Court specifically compared the general disclaimer in *Baird* to the specific disclaimers in place in this instant case. *See* section on "Disclaimers," *infra*.

was solely for informational purposes; it was not to be used to identify problems that Defendant would later repair. The underlying purpose of the *Baird* contract, in contrast, was not only to repair any damage found, but "to protect Baird's residence from further insect damage." *Id.* In the case at bar, in contrast, the purpose of the contract was solely to provide Plaintiff with information about the home he was interested in purchasing in order to inform his decision. In light of that purpose, the inspection company in this case generally fulfilled its obligation to provide information about the home, although failing to provide complete information about the foundation of one room in the home, the Florida Room. That failure does not "completely defeat the major purpose of the contract," which was to provide information about the entire home. For all of the above reasons, *Baird* is distinguishable from the case at bar.

## Disclaimers

Plaintiff also cites *Ash v. All Star Lawn & Pest Control*, 256 Va. 520 (1998), which is more on point with this case than *Baird*. *Ash* specifically dealt with buyers, not homeowners, and a termite inspection, not for the purposes of determining any retreatment or repairs needed, but for information in connection with purchasing a house. The resulting damages, as claimed in the instant case, were that the plaintiff buyers had purchased a home later discovered to be defective. In *Ash*, the sale of the house was contingent on the seller's providing the plaintiffs with "an approved VA/FHA wood destroying insect report from a licensed pest control operator prior to Settlement Date showing the Property's principal dwelling and garage to be free of visible wood destroying insect infestation with no visible unrepaired damages from said infestation." *Ash*, 256 Va. at 522. The seller hired a termite inspector to examine the home. *Id.* The inspector examined the home, but could not fit into certain places in the home because of his large size. *Id.* at 523. Further, the inspector wrote "that there was evidence of treated and repaired termite damage," but he failed to indicate the location of this damage. The plaintiffs then signed the inspector's report, but one of the plaintiffs later stated that "she would not have signed the report if she 'had been told there was anything wrong with it'." *Id.* at 524. Within a year of this inspection, the plaintiffs hired their own termite inspector, who found significant moisture and termite damage in the spaces the All Star inspector failed to inspect. *Id.*

The Virginia Supreme Court commented in *Ash* that "merely making a *broad and generalized disclaimer* on a termite inspection report following a casual or defective inspection does not *automatically* insulate the inspector from contract liability. To hold otherwise would render the report useless." *Ash*, 256 Va. at 525 (emphasis added). The Court further noted that "[t]he inspector, in preparing the report, undertakes the obligation to report clearly and effectively *the existence of damage to the structure inspected." Id.* The Court then articulated its holding, explaining that the inspector has a duty "to explain clearly and effectively any impediments encountered in making a thorough inspection through the use of clear disclaimers and disclosure of his failure to inspect specific areas or the structure." *Id.* The Court noted in *Ash* that, had the inspector made clear disclaimers and disclosed his inability to inspect certain areas, he would have been insulated from liability. *Id.* Defendant home inspector here claims that he did just that. This Court agrees.

*Ash* and *Baird* are distinguishable from the case at bar in that the Defendant's disclaimers in this case, unlike in those two cases, are clear and conspicuous, and specific, not generalized. The disclaimers in the instant case appear in bold, capital letters as part of the written report, which Plaintiff, in the Amended Motion for Judgment, admitted he received. Paragraph 3 of that contract states that Defendant "**ASSUMES NO RESPONSIBILITY FOR THE COST**

---

[5] Even if the specific, conspicuous disclaimers in the contract were not enough to insulate this Defendant from liability – and *Ash* suggests that such disclaimers would be sufficient – Defendant here is only liable for repair damages if Plaintiff proved that the report induced Plaintiff to buy the house. But, the record does not contain any evidence as to whether accurate information about the foundation of the Florida Room would have deterred Plaintiff from acting in the manner he did, to wit, purchasing the house at the price he paid. That is, Plaintiff did not testify clearly that he detrimentally relied on the faulty inspection report in buying the house, which he would not have purchased had the report been complete and accurate. Additionally, even if Plaintiff proved he relied on the report in buying the house, his damages are not the *direct* result of any inaccuracy in the report; at best, the cost of repair is the indirect or *consequential* result of such inaccuracy, which dangers are specifically disclaimed, *see infra*, ("This limitations of liability . . . applies to all consequential damages . . . and property damage of any nature."). Even if consequential damages were not disclaimed, the burden is on Plaintiff to provide the link between the inspection report and damages for cost of repair, without which the cost of repair cannot be shown to be the indirect or "consequential" result of the flawed report.

OF REPAIRING OR REPLACING ANY REPORTED OR UNREPORTED DEFECTS OR CONDITIONS." Paragraph 4 explains that "THE INSPECTION AND REPORT ARE NEITHER INTENDED, NOR TO BE CONSTRUED AS, A GUARANTEE OR WARRANTY, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR USE, REGARDING THE CONDITION OF THE BUILDING(S), AND ANY ITEMS AND SYSTEMS INSPECTED THEREIN, AND SHOULD NOT BE RELIED ON AS SUCH." Paragraph 5 dictates that Defendant "ASSUMES NO LIABILITY AND SHALL NOT BE LIABLE FOR ANY MISTAKES, OMISSIONS, OR ERRORS OF JUDGMENT OF ITS EMPLOYEE (BEYOND THE COST OF THIS REPORT) IN CONDUCTING THE INSPECTION AND PREPARING THIS REPORT. THIS LIMITATION OF LIABILITY SHALL INCLUDE AND APPLY TO ALL CONSEQUENTIAL DAMAGES, BODILY INJURY, AND PROPERTY DAMAGE OF ANY NATURE."[6]

The case at bar is similar to *Ash* in that the purpose of the contract was to provide information about the home before the buyer bought it. The inspector in *Ash*, unlike the one in *Baird*, did not inspect the home in order to stop any continuing problem with termites; he merely inspected the home to provide the plaintiffs with information about the home prior to sale. The inspector in this case, like the inspector in *Ash*, failed to provide complete information about the condition of the home, which could be argued as frustrating, though, only partially as to the foundation of the Florida Room, the purpose of the contract. However, the disclaimer did not fully frustrate the informational purpose of the contract. Nevertheless, the contract was breached when Defendant failed to provide accurate information about the entire house, including the foundation of the Florida Room, and thus Plaintiff should recover for that breach. However, Defendant has effectively limited its liability to the cost of the report, $195.00, for its mistakes in reporting on the Florida Room, as provided in Paragraph 5 of the contract. The Court finds that the entire purpose of the contract was not frustrated by the waivers, that the waivers were specific and conspicuous, and, that this was an arms-length transaction in which both parties accepted the specific, conspicuous disclaimers as part of the agreement. Had Plaintiff not wanted to accept the

---

[6] Note that Defendant specifically disclaims all consequential damages, that is, all damages not directly attributable to the breach of contract, here, failure to give full and accurate information to the buyer. The cost of repairs are not a direct consequence of any negligence by the inspector, but are the indirect result of such negligence, and thus excludable as consequential damages. *See note 5, supra.*

waivers, he could have refused to pay or demanded his fee back and retained another home inspector. Plaintiff's only remedy for Defendant's negligence is to recover the cost of the inspection report.

## Unconscionability

### A. *Common Law*

Plaintiff also argues that the contract is unconscionable, and, therefore, he should be able to recover not only the cost of the contract, as the contract/report itself provides, but the cost of repairs as well. Under Virginia common law, a plaintiff "b[ears] the burden of proving [unconscionability] by clear and convincing evidence." *Pelfrey v. Pelfrey*, 25 Va. App. 239, 244 (1997). An unconscionable bargain is "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." *Smyth Bros.-McCleary-McClellan Co. v. Beresford*, 128 Va. 137, 170 (1920). A court may void a contract on the grounds that it is unconscionable if "[t]he inequality [is] so gross as to shock the conscience." *Id*. In order "[t]o determine whether an agreement is unconscionable, a court must examine the 'adequacy of price' or 'quality of value'." *Pelfrey*, 25 Va. App. at 244 (citation omitted). In a case in which "inadequacy of price or inequality of value are the only indicia of unconscionability, the case must be extreme to justify equitable relief." *Id*. (citation omitted). However, in a case in which " 'gross disparity in value exchanged' exists ... the court should consider 'whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resulting agreement unconscionable'." *Id*. at 244-45 (citation omitted).

In the case at bar, Plaintiff has failed to prove that the home inspection contract was unconscionable, certainly not by clear and convincing evidence.

---

[7] Plaintiff in this case, unlike one of the plaintiffs in *Ash* who testified "he had 'no recollection' of reading All Star's report at closing," admitted at trial that he read the disclaimers before closing on the house. *Ash*, 256 Va. at 524. He admitted he could have hired another inspector who did not provide such disclaimers before closing, but he failed to do so. Plaintiff was an experienced realtor and appraiser; he was not simply a layperson contracting with an experienced professional. (Plaintiff testified at trial that he had been a real estate broker for more than thirty years and an appraiser, which were the ways he developed his knowledge of construction.) Plaintiff also testified that, if a problem with a house was noticeable and significant enough, he himself would notice it ("pay attention to it" were his words at trial).

The contract does not create an inequality between the home inspector and Plaintiff that is "so gross as to shock the conscience." *Smyth Bros.*, 128 Va. at 170. In the contract, Plaintiff promised to pay Defendant $195.00 in exchange for Defendant's promise to inspect the designated property. Plaintiff paid Defendant the required amount for his services, and the contract provided for circumstances in which Defendant might make an error in its inspection, which would allow Plaintiff to recover the full amount that he paid Defendant to inspect the designated property. The disclaimer in the contract merely limited Defendant's liability to the amount Plaintiff paid Defendant to inspect and report on the condition of the house; it did not create a "gross disparity in value exchanged." *Pelfrey*, 25 Va. App. at 244 (citation omitted).

In addition, Plaintiff presented no evidence to suggest that Plaintiff detrimentally relied on the home inspector's report in purchasing the house and would not have purchased the property if the home inspector had reported fully on the Florida Room's foundational inadequacies. The only mistake made was as to one room of the house, and only as to one aspect, the adequacy of the foundation of the Florida Room. Plaintiff never testified or presented any evidence that he would have not carried out the closing had he known that there was a problem with the foundation of the Florida Room.

## B. *Restatement (Second) of Contracts*

Plaintiff also cites Section 205 of the Restatement (Second) of Contracts to bolster his unconscionability argument. That section states: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981). Comment (a) of that section defines "good faith":

> Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness. The appropriate remedy for a breach of the duty of good faith also varies with the circumstances.

*Id.* § 205, cmt. a. In the case at bar, Defendant did not breach its duty of good faith and fair dealing in its performance of the contract; Defendant merely was

negligent in failing to find and report the Florida Room foundational damage. Nothing suggests that Defendant acted in bad faith. In fact, Defendant testified at trial that he still believed as he did when he wrote the report, that the foundation was adequate. The fault he is chargeable with is, at most, incompetency, but not unconscionability.

Plaintiff also refers to Section 208 of the Restatement (Second) of Contracts that provides:

> If a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract or may enforce the remainder of the contract without the unconscionable term or may so limit the application of any unconscionable term as to avoid any unconscionable result.

*Id.* § 208. The comments in this section state that "[t]he determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose, and effect." *Id.* § 208, cmt. a. The contract here is not unconscionable. Its entire purpose was not frustrated. Information about the entire house was provided, and the only faulty information dealt with a small part of the home, the foundation of the Florida Room. It is unclear the effect the report had on Plaintiff because Plaintiff never indicated how and if he would have acted differently had he known that the Florida Room's foundation was defective. Because the disclaimer provides Plaintiff with a remedy, recovery of the inspection cost, the contract is not unconscionable.

## C. *Virginia Consumer Protection Act*

In addition, Plaintiff cites the Virginia Consumer Protection Act as support for his unconscionability argument. The General Assembly's purpose in creating the Act was "to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. A supplier is defined as "a seller, lessor, or licensor who advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions." *Id.* § 59.1-198. A consumer transaction includes "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes." *Id.* In the case at bar,

Defendant, a home inspector, can be considered a seller who engages in consumer transactions because Defendant sells its home inspection services to be used for household purposes. The Court, therefore, agrees that the Act applies to Defendant.

Plaintiff argues that § 59.1-200(A) of the Act prevents businesses from making deceptive or unconscionable contracts. It is true that the Act seeks to prevent unfair or deceptive dealings between sellers and consumers; however, § 59.1-200 never even uses the word "unconscionable" and seems to deal mostly with deception through misrepresentation. *See* Va. Code Ann. § 59.1-200(A). The Court found no deception, unfair dealings, or fraudulent misrepresentation as to the contract here. Plaintiff further cites *Clark v. Orkin Exterminating Co.*, 147 F. Supp. 2d 458, 461 (W.D. Va. 2001), to bolster his unconscionability argument under the Act. *Clark* deals with the failure of a termite inspector to properly treat a home for termites. In *Clark*, the U.S. District Court for the Western District of Virginia applied the Virginia Consumer Protection Act by analogy to an implied warranty claim, discussing how the Act "provide[s] evidence of the public policy against enforcing contractual provisions that immunize a party from making good on implied warranties." *Id.* The district court stated that:

> The [Act], for instance, prevents firms from making contracts that are deceptive and unconscionable. Va. Code § 59.1-200(A). Similarly, the frustration of essential purpose doctrine, applicable to contracts for goods, provides that an exclusive remedy failing the contract's essential purpose must yield to other cures. *See Environtech Corp. v. Halco Engineering, Inc.*, 234 Va. 583, 587, 364 S.E.2d 215 (1988). These doctrines provide evidence of the public policy against enforcing contractual provisions that immunize a party from making good on implied warranties.

*Id.* Unlike in *Clark*, where the plaintiff was merely guaranteed retreatment in the event of a contractual breach, here Plaintiff has a remedy because he can recover the entire cost of the contract he made with Defendant should Defendant's inspection be ruled faulty.

## D. *Uniform Commercial Code, Article 2*

Finally, Plaintiff refers to the unconscionability provisions of Article 2 of the Uniform Commercial Code (UCC), acknowledging that this case deals with services not goods, and thus is not governed by the UCC. However, the UCC can be applied to this case by analogy, the Court looking to the UCC for guidance. However, a defendant may limit his commercial liability under the UCC, including any implied warranty of merchantability or of fitness for a specific purpose if done in large, conspicuous, bold typeface, as was done here. Such waivers or limitations of liability are permissible and are not "prima facie unconscionable." Va. Code. Ann. § 8.2-719(3). Only in instances in which a party limits the "consequential damages *for injury to the person* in the case of consumer goods," will the limitation under the UCC be "prima facie unconscionable." *Id.* (emphasis added).

### Summary

*Baird*, 217 Va. 745 (1977), found that a contract disclaimer that the inspector was only liable for "damages … due to its neglect" was insufficient as a bar to liability as too general, and Ash, 256 Va. 520 (1998), held that a "broad and generalized disclaimer" did not "automatically insulate the inspector from contract liability" and noted that, had the inspector made clear disclaimers, he could have insulated himself from liability. Given the valid, specific, and conspicuous disclaimers in the inspection report, as well as the lack of testimony as to Plaintiff's actions had he known of the foundational problem with the Florida Room (needed in order to establish that the cost of repairs was the consequential damage or indirect result of the breach of contract or warranty), this Court finds that Plaintiff is not entitled to recover the cost of repairs.

Although Mr. McLemore did an admirable job in presenting his arguments to the Court, the law simply did not support his case for Plaintiff's recovering the cost of repairs. Therefore, judgment is entered for Plaintiff, but only in the amount of $195.00, the cost Plaintiff paid for the inspection.