Present:  All the Justices

KENNETH R. ASH, SR. AND
 JOYCE A. ASH

                                          OPINION BY
v.  Record No. 972711        JUSTICE LAWRENCE L. KOONTZ, JR.
                                       November 6, 1998

ALL STAR LAWN AND
 PEST CONTROL, INC.


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                      James A. Cales, Jr., Judge

     In this appeal, we consider whether the trial court

properly ruled that purchasers of real property could not

recover under a claim of breach of contract against the

inspection company for failure to provide an adequate termite

and moisture damage report on behalf of the seller as required

as a condition of the sale of the property.

     Under well-settled principles, we recount only those facts

necessary to our resolution of the appeal.  On January 3, 1994,

Kenneth R. Ash, Sr. and Joyce A. Ash (the Ashes) completed the

purchase of a home in Portsmouth.  The contract of sale required

the Ashes to take possession of the home "as is."  However, as a

condition of the sale, the seller agreed to provide the Ashes

with

          an approved VA/FHA wood destroying insect report from
          a licensed pest control operator prior to Settlement
          Date showing the Property's principal dwelling and
          garage to be free of visible wood destroying insect
          infestation with no visible unrepaired damage from
          said infestation.  Said report shall also indicate
          that readily accessible areas of the foundation and

understructure including crawl space, sills, joists, subflooring and substructure support timbers to be free of standing water and/or visible moisture damage. Cost of inspection and required treatment and repairs shall be paid by Seller.

The seller contracted with All Star Lawn and Pest Control, Inc. (All Star) to provide this inspection report. Jeffrey C. Stuart, owner of All Star and a licensed pest control inspector, conducted an inspection of the home on December 18, 1993 and completed a standard form reporting the condition of the home. In that report, Stuart noted that he had found and repaired existing moisture damage in two locations outside the home.

Section 7 of the form Stuart used to make his report included a pre-printed statement that the "[a]ttic, interior of walls, under floor coverings and behind appliances" were inaccessible areas and obstructions and, thus, were not subject to inspection. In addition to the areas listed in the printed portion of section 7, a handwritten notation made by Stuart indicated that areas of the "Crawl Space - Behind Air Ducts" were also inaccessible.

Section 11 of the form consisted of four disclosures made by All Star, the first three of which are relevant to this appeal:

A. The inspection covered the readily accessible areas of the property, including attics and crawl spaces which permit entry. Special attention was given to those accessible areas which experience has shown to be particularly susceptible to attack by wood

2

destroying insects. Probing and/or sounding of those areas and other visible accessible wood members showing evidence of infestation was performed.

B. The inspection did not include areas which were obstructed or inaccessible at the time of inspection . . . .

C. This is not a structural damage report. Neither is this a warranty as to absence of wood destroying insects.

Section 10 of the form provided space for the inspector to make additional comments. In that section, Stuart noted that there was evidence of treated and repaired termite damage, but did not identify the location where this was observed. He further indicated that there was "no visible structural moisture damage in crawl space." Stuart charged the seller $1,010 for his services, which included a $35 fee for the inspection and $975 for repairing and repainting the areas where unrepaired moisture damage had been observed.

The crawl space was 18 inches in height. Portions of it were obstructed by sheet metal air ducts suspended between the floor joists and the ground. Stuart subsequently testified that these areas were inaccessible to him because "I'm six-one and at the time I was 260 pounds." Stuart further testified that he attempted to see beyond the air ducts and tested the accessible area by probing the wood with a claw hammer.

Stuart conceded that he was able to get 10 feet into the crawl space, and that he attempted to look beyond the air ducts

3

using a flashlight. He maintained that he did not observe any unrepaired moisture or termite damage anywhere in the crawl space. The Ashes introduced a photograph of the area of the crawl space in front of the air ducts that shows a screwdriver pressed into a floor joist as a probe to establish the existence of moisture damage.

The Ashes signed the purchasers' acknowledgement at the bottom of the form on the day of settlement at the office of the closing attorney. At trial, Kenneth Ash testified that he had "no recollection" of reading All Star's report at closing, saying "[w]e were just told [to] sign the papers. We [were] going to be here all night if you had to read everyone of them." Joyce Ash testified that she would not have signed the report if she "had been told there was anything wrong with it."

In September 1994, the Ashes employed Stuart M. Zenzel, a civil engineer and licensed pest control inspector, to reinspect the home. Zenzel testified that upon entering the crawl space he was able to observe unrepaired moisture damage in the area in front of the air ducts. This was the area that Stuart had conceded he had been able to enter and inspect at the time of his inspection. Zenzel, who is of a slighter build than Stuart, was able to move beyond the air ducts to the back areas of the crawl space and discovered significant termite and moisture damage in those areas. Zenzel further testified that all of the

4

damage he discovered was not of recent origin and would have been visible at the time of Stuart's inspection.

As a result of Zenzel's report, the Ashes contracted with Wright Construction Company, Inc. for a structural evaluation and estimate for cost of repairs to the home. Joseph A. Fosnock, an estimator for Wright Construction, confirmed the existence of the damage discovered by Zenzel and estimated the cost of repair at $16,900.

On January 23, 1995, the Ashes filed a motion for judgment against All Star seeking damages of $18,500. In that pleading, the Ashes alleged that they were third-party beneficiaries of the contract between the seller and All Star.

The matter was heard by the trial court in a bench trial on September 29, 1997. At the conclusion of all the evidence, the trial court ruled that All Star's report "clearly indicated [Stuart] couldn't get to every place, that every place was not read[ily] accessible." Accordingly, the court determined that the Ashes were on notice that the report was incomplete and could have required a further inspection. Noting that "[c]aveat emptor still applies in Virginia," the court entered judgment in favor of All Star. We awarded the Ashes an appeal.

We begin by noting that although All Star initially contested the Ashes' claim of being third-party beneficiaries of the contract between the seller and All Star, that issue was not

5

raised at trial. During oral argument on appeal, All Star conceded that it did not challenge that assertion at trial or assign cross-error for purposes of raising the issue on appeal. Accordingly, for purposes of this appeal, we accept that the Ashes were intended third-party beneficiaries of the contract.

The Ashes assert that the trial court erred in ruling that All Star could insulate itself from liability by disclaiming on the report that certain areas were accessible. In conjunction with this argument, the Ashes further assert that the trial court erred in construing the statements in the report in favor of All Star.

We agree with the Ashes that merely making a broad and generalized disclaimer on a termite inspection report following a casual or defective inspection does not automatically insulate the inspector from contract liability. To hold otherwise would render the report useless. The inspector, in preparing the report, undertakes the obligation to report clearly and effectively the existence of damage to the structure inspected. See Baird v. Dodson Bros. Exterminating, 217 Va. 745, 749, 232 S.E.2d 770, 773 (1977). Inherent in that obligation is the corresponding duty of the inspector to explain clearly and effectively any impediments encountered in making a thorough inspection through the use of clear disclaimers and disclosure of his failure to inspect specific areas of the structure.

6

Where this is done, the inspector will be insulated from liability. However, the evidence presented in this record does not support the trial court's judgment that an adequate disclosure was made in this case.

The evidence clearly showed that the area behind the air ducts in the crawl space was not "inaccessible" in the same sense as other areas excluded from the report, such as interior walls and areas beneath permanent floor coverings that are not traditionally subject to inspection. These latter areas are "inaccessible" for visual and physical inspection because access to them would require structural alterations. By contrast, here the sole cause of the area behind the air ducts being inaccessible was, as Stuart conceded, that his large physical size prohibited him from going over or under the air ducts. At best, Stuart's disclaimer was ambiguous. At worst, it was misleading. In either case, the disclaimer did not effectively explain the circumstances surrounding Stuart's limited inspection or give notice to the purchasers of the property that a thorough inspection of the area would not otherwise require structural alterations.

Moreover, while the report states that there was "no visible structural moisture damage in [the] crawl space," the evidence at trial clearly showed that unrepaired damage was readily apparent in the area of the crawl space accessible to

Stuart. Thus, notwithstanding his disclaimer, he simply failed in his contractual obligation to discover and disclose the unrepaired damage in the accessible area of the crawl space. Accordingly, the evidence in this particular case does not support the trial court's conclusion that All Star complied with its contractual obligations. Code § 8.01-680.

For these reasons, we will reverse the trial court's judgment, and, because the trial court did not reach the issue of damages, remand for further proceedings consistent with this opinion.[*]

<u>Reversed and remanded</u>.

---

[*]Because of our holding on the issue addressed, we do not address the other issues raised by the Ashes in this appeal.