# United States Court of Appeals
## For the First Circuit

No. 09-1648

DUARTE CALVAO, ET AL.,

Plaintiffs, Appellants,

v.

TOWN OF FRAMINGHAM,

Defendant, Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

Jack J. Canzoneri with whom Mark A. Hickernell, Alan J. McDonald, and McDonald Lamond & Canzoneri were on brief for the appellants.
Christopher J. Petrini with whom Peter L. Mello and Petrini & Associates, P.C. were on brief for the appellee.
John Foskett and Deutsch Williams Brooks Derensis & Holland, P.C. were on brief for amici curiae City Solicitors and Town Counsel Association, Massachusetts Municipal Association, and Massachusetts Chiefs of Police Association, Inc., in support of the appellee.

March 17, 2010

**LYNCH**, **Chief Judge**.  This case under the Fair Labor Standards Act ("FLSA") raises an issue about whether a city or town must give notice to its public safety officers as a matter of federal law before the municipality takes advantage of a special statutory exemption for these officers from usual overtime requirements, 29 U.S.C. § 207(k).  We hold no such notice is required.

Plaintiffs are police officers of the Town of Framingham who brought a putative class action suit against the Town in April 2005, alleging that the Town had failed to pay them sufficient overtime in violation of the FLSA, 29 U.S.C. §§ 201-19, and seeking damages.  Anticipating the Town's defense, the officers sought a declaratory judgment that the Town was ineligible for the FLSA's limited public safety exemption from overtime, 29 U.S.C. § 207(k).  That exemption eases the FLSA's overtime pay requirements on public employers who establish work schedules that meet statutory requirements.

The district court granted partial summary judgment, holding the Town met the eligibility requirements for the public safety exemption. Calvao v. Town of Framingham, No. 05-10708, 2008 WL 2690358, at *4 (D. Mass. July 2, 2008).  The parties have since stipulated to judgment on the remaining issues.

We affirm the district court and reject plaintiffs' argument that the Town was required to notify affected employees

-2-

before establishing a valid work period under § 207(k). The text of the statute and the Department of Labor's interpretive guidance, as well as our caselaw, confirm that a public employer need only establish a § 207(k)-compliant work period to claim the exemption's benefits without explicitly giving notice to the affected employees. The Town has done so and is entitled to judgment. We also reject plaintiffs' claim that the district court abused its discretion by denying their motion to strike certain evidence.

I.

A.      Legal Background: The FLSA's Public Safety Exemption, 29 U.S.C. § 207(k)

The history and scope of the FLSA public safety exemption set the background. "Congress enacted the FLSA in 1938 to establish nationwide minimum wage and maximum hours standards." Moreau v. Klevenhagen, 508 U.S. 22, 25 (1993); Ellen C. Kearns et al., The Fair Labor Standards Act § 1.III, at 12-13 (1999). Later amendments in 1966 and 1974 extended the Act's reach to state and municipal employers. See Moreau, 508 U.S. at 25-26. Despite congressional efforts to mitigate the effect of these amendments on municipal coffers, e.g., Kearns et al., supra § 11.V.B., at 687, the amendments triggered protracted litigation, as state and local public employers mounted constitutional challenges to the FLSA's regulation of state-employer compensation schemes. See Moreau, 508 U.S. at 26 & n.6 (collecting cases). In part, the employers were successful. See Nat'l League of Cities v. Usery, 426 U.S. 833,

851-52 (1976) (invalidating 1974 amendments to the FLSA to the extent that they "impermissibly interfere[d] with the integral governmental functions" of states and municipalities).

In February 1985, the Supreme Court upheld Congress's power under the FLSA to regulate the payments due to state and local employees. See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985). State and municipal authorities reacted with "grave concern" to the decision, due in part to "[t]he projected 'financial costs of coming into compliance with the FLSA-- particularly the overtime provisions.'" Moreau, 508 U.S. at 26 (quoting S. Rep. No. 99-159, at 8 (1985)).

In response, both the House and Senate held hearings on the issue "and considered legislation designed to ameliorate the burdens associated with necessary changes in public employment practice." Id. Congress ultimately enacted several provisions designed to allay public employers' fears and contain costs. See, e.g., id. Congress also delayed enforcement of the FLSA against state and local employers until April 15, 1986, to give them time to comply with the Act's amended requirements. See Fair Labor Standards Amendments of 1985, Pub. L. No. 99-150, § 2(c), 99 Stat. 787, 788-89.

Section 207(k) was originally passed in 1974. The provision created a partial FLSA exemption for law enforcement and fire protection personnel ("public safety personnel"). See 29

U.S.C. § 207(k). When Garcia held the FLSA applied to municipal employees, § 207(k) became very important to municipalities. See Martin v. Coventry Fire Dist., 981 F.2d 1358, 1361 (1st Cir. 1992).

Under the FLSA, employees other than public safety personnel are generally entitled to payment "at a rate not less than one and one-half times" their regular wages for any time worked in excess of forty hours in a seven day period. 29 U.S.C. § 207(a)(1). However, the partial exemption in § 207(k) set a higher threshold number of hours that public safety personnel can work in a twenty-eight day work period--or a proportional number of hours in a shorter work period of at least seven days--before these employees become entitled to overtime compensation. See id. § 207(k).[1]

_____

[1]     Section 207(k) reads in its entirety:

(k) Employment by public agency engaged in fire protection or law enforcement activities.

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if--

    (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

-5-

In § 207(k), Congress set the maximum number of pre-overtime hours; it gave the Secretary of Labor authority to promulgate regulations establishing a lower ceiling. Id. § 207(k)(1)(B); see also O'Brien v. Town of Agawam, 350 F.3d 279, 290 n.20 (1st Cir. 2003). The Secretary did so in 1987, setting a limit for law enforcement personnel of 171 hours over a twenty-eight-day period, or the proportional equivalent over a shorter span of time. See 29 C.F.R. § 553.230. For a twenty-four-day work period, this ratio works out to approximately 147 hours, or about forty-three hours every seven days. Id. § 553.230(c).

Section 207(k) eases the burden of the FLSA's overtime provisions on state and local employers two ways. The partial exemption provides for higher hourly standards before requiring the payment of overtime; further, it permits overtime hours to be computed over a workweek that may be longer than a forty-hour workweek and that the employer selects. As we explained in Agawam:

> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

> compensation at a rate not less than one and one-half times the regular rate at which he is employed.

The work period at issue here falls under clause two.

-6-

> [Section 207(k)] raises the average number of hours the employer can require law enforcement and fire protection personnel to work without triggering the overtime requirement, and it accommodates the inherently unpredictable nature of firefighting and police work by permitting public employers to adopt work periods longer than one week. The longer the work period, the more likely it is that days of calm will offset the inevitable emergencies, resulting in decreased overtime liability.

350 F.3d at 290 (internal citations omitted); see also Garcia, 469 U.S. at 554 n.17 (citing § 207(k)'s limited public safety exemption as an illustration of Congress's attention to "the special concerns of States and localities"); Avery v. City of Talladega, 24 F.3d 1337, 1344 (11th Cir. 1994) ("The work period concept was intended to ease the overtime burdens of certain public employers.") (citing 52 Fed. Reg. 2012, 2024 (Jan. 16, 1987)); Martin, 981 F.2d at 1361.

Before a public employer may qualify for the limited public safety exemption, two things must be true: (1) the employees at issue must be engaged in fire protection or law enforcement within the meaning of the statute and (2) the employer must have established a qualifying work period. See Agawam, 350 F.3d at 290. In turn, the qualifying work period must be at least seven but not more than twenty-eight consecutive days. 29 C.F.R. § 553.224(a). Overtime need not be paid unless the number of hours worked exceeds ratios, different for police than for fire employees that are set forth in Department of Labor regulations. 29 C.F.R. § 553.230. There are other requirements that are not germane here.

Assuming these conditions are satisfied, "the employer can simply start paying its employees under § 207(k)." Agawam, 350 F.3d at 291. Further, the employer may opt to pay its employees more than § 207(k) mandates without forfeiting the benefits of the exemption. Id. at 291 & n.21; Milner v. Hazelwood, 165 F.3d 1222, 1223 (8th Cir. 1999) (per curiam). Public employers bear the burden of proving they met § 207(k)'s requirements by clear and affirmative evidence. Agawam, 350 F.3d at 290-91; Kearns et al., supra § 11.V.B., at 688.

B.    Factual Background

Plaintiffs do not dispute the district court's description of the Town's actions and agree that the officers were law enforcement personnel within the meaning of the statute. However, they argue that the court erred by concluding that the Town could--and did--establish a qualifying work period under 29 U.S.C. § 207(k), without explicitly notifying affected employees it was doing so. We briefly review the relevant facts.

In September 1985, after Garcia was decided, the Town's personnel board prepared a memorandum that expressed "extreme concern" at the application of the FLSA's wage and hour requirements to municipal employers and sought guidance from the Town's counsel. Over the ensuing months, the Massachusetts Municipal Association and the National League of Cities gave the Town information about the FLSA's impact on local employers. In

-8-

March 1986, the Town's director of personnel prepared a memo to "all department heads, appropriate boards and commissions." That memo provided information on employees exempt from the FLSA's coverage and noted that "determination of who is exempt must be made prior to April 15, 1986; the effective date for coverage under the act."

On April 11, 1986, the Town's executive administrator circulated a memo to the police chief, fire chief, personnel director, and town counsel. The memo was addressed to the publicly available personnel file maintained by the Town's board of selectmen. Its subject line read "Declared Work Period-Police and Fire Personnel." The memo stated, in its entirety,

> Pursuant to section 207(K) of the Fair Labor Standards Act and 29 C.F.R. Part 553, the declared work period for Police and Fire regular shifts is 24 days. This declaration is effective with work periods commencing April 13, 1986.

There is no evidence about whether the Town provided a copy of this memo to the police officers' union or individual police officers, or otherwise notified officers of the declared work period. That lack of evidence is a key component of plaintiffs' claim that summary judgment could not be entered.

Both before and after the April memo was circulated, the Town's police officers worked a "4-2" schedule; that is, they worked four consecutive days followed by two days off duty. In 2000, as part of a new collective bargaining agreement, the police

officers' union negotiated a "5-3" schedule, which shifted the officers' work cycle to five days on duty followed by three days off. These schedules both divide evenly into a twenty-four day work period and so are compliant with § 207(k).

## II.

A.      The Town Established a Qualifying Work Period within the Meaning of § 207(k) and Was Not Obliged to Provide Notice to Its Employees

Plaintiffs assert that the Town was required to give affected employees notice in order to establish a § 207(k) work period and qualify for the public safety exemption. Plaintiffs' claim raises an issue of statutory interpretation and is before us on summary judgment. For both of these reasons, our review is de novo. See Chiang v. Verizon New England Inc., No. 09-1214, 2010 WL 431873, at *5 (1st Cir. Feb. 9, 2010). "We may affirm the district court on any basis apparent in the record." Id.

We reject plaintiffs' argument in light of § 207(k)'s text and history, as well as the interpretive guidance given by the Department of Labor in its regulations. On the undisputed facts, the Town's actions were sufficient to establish a qualifying work

-10-

period, despite the asserted lack of notice to its employees.[2] Summary judgment was appropriate.

We start with the statutory text. The text of § 207(k) does not specify that a public employer is required to establish a work period or identify how an employer might do so. Further, the text contains no requirement of notice to the affected employee. 29 U.S.C. § 207(k).

The Town points to related legislative history. Congress explicitly rejected a proposal mandating employee agreement before a § 207(k) work period could be established. Barefield v. Vill. of Winnetka, 81 F.3d 704, 710 (7th Cir. 1996) (citing H.R. Rep. No. 953, 93d Cong., 2d Sess. (1974) (Conf. Rep.)); see also Agawam, 350 F.3d at 291 (noting that "employees' approval is not required" under § 207(k)). The Town argues this is indicative that not only was no agreement required but no notice was required. This reading is consistent with Congress's goal of "ensur[ing] that public agencies would not be unduly burdened by the FLSA's overtime requirements." Kearns et al., supra § 11.V.B., at 687; see also H.R. Rep. 93-913, at 2837-38 (1974) (describing the House's original version of § 207(k), which provided for a complete

---

[2] We will assume arguendo, to the officers' benefit, that the Town's dissemination of the April 11, 1986, memorandum to the various department heads, and subsequent maintenance of the document as a public record, available for inspection under Massachusetts law, see Mass. Gen. Laws ch. 4, § 7; id. ch. 66, § 10, did not constitute notice to its employees.

overtime exemption for public safety personnel to help ensure that the FLSA would have a "virtually non-existent" impact on state and local governments).

It is true that § 207(k)'s text does not prohibit giving notice either. However, Congress expressly delegated responsibility for implementing the statute to the Secretary of Labor, see Moreau, 508 U.S. at 27 (citing 29 U.S.C. § 203),[3] who, after notice and comment, promulgated regulations, see 52 Fed. Reg. 2012; 51 Fed. Reg. 13402 (Apr. 18, 1986). These regulations make it clear the Secretary rejected a notice requirement under § 207(k). Under these circumstances, "Congress clearly 'expect[ed] the agency to be able to speak with the force of law,'" and we "must defer to the regulations' resolution of a statutory ambiguity, so long as it is 'reasonable.'" Rucker v. Lee Holding Co., 471 F.3d 6, 11 (1st Cir. 2006) (quoting United States v. Mead Corp., 533 U.S. 218, 229 (2001)).

---

[3]    When it enacted the 1985 amendments to the FLSA Congress delegated authority to the Secretary to promulgate "such regulations as may be required to implement" them. Fair Labor Standards Amendments § 6, 99 Stat. at 790. Since these amendments concerned, inter alia, alternative compensation for public employees to whom "overtime compensation is required" by the FLSA, 29 U.S.C. § 207(o)(1), the implementing regulations necessarily addressed both the 1985 amendments and prior FLSA provisions concerning public employees, including § 207(k). See 29 C.F.R. § 553.2(a). The Secretary's interpretation of a § 207(k) "work period" explicitly cited the 1985 delegation as a source of its authority. 29 C.F.R. § 553.224.

During rulemaking, the Secretary of Labor reviewed and rejected a proposal to impose a notice requirement for § 207(k). 52 Fed. Reg. at 2024-25. The Secretary observed that unlike other sections of the FLSA, which "require[] that there be an agreement or understanding concerning compensatory time prior to the performance of work, there is no requirement in the Act that an employer <u>formally state its intention</u> or obtain an agreement in advance to pay employees under section 7(k)." <u>Id.</u> at 2025 (emphasis added).

The resulting regulation, 29 C.F.R. § 553.224, plainly rejected both a requirement that municipalities make a formal statement of intention and a requirement that they obtain agreement. The regulation explains that "any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days" suffices as a work period, noting that "[e]xcept for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day." <u>Id.</u> § 553.224(a).

Section 553.224's reference to an "established" work period is the foundation of plaintiffs' claim that an employer must provide notice to employees to set up a § 207(k) work period. But

-13-

§ 553.224 includes no procedural steps of any kind, let alone a notice requirement.

Our caselaw reflects in dicta the Secretary's interpretation that federal law in § 207(k) does not require notice to the affected employee, see Agawam, 350 F.3d at 291; see also id. at 291 n.21 ("The work period requirement is ordinarily not a high hurdle."), as does the law in other circuits to have considered the issue, see Milner, 165 F.3d at 1223 (per curiam) ("[T]he [§ 207(k)] exemption need not be established by public declaration."); Spradling v. City of Tulsa, 95 F.3d 1492, 1505 (10th Cir. 1996) ("[A] public employer may establish a 7(k) work period even without making a public declaration, as long as its employees actually work a regularly recurring cycle of between 7 and 28 days.") (internal quotation marks and citation omitted); Barefield, 81 F.3d at 710 (finding a municipal employer entitled to § 207(k) exemption, even though the work schedule at issue predated the enactment of the provision and the employer "made no declaration of intent to come under Section 7(k)") (internal quotation marks omitted).

Here, the Town has used a § 207(k)-compliant work period at all relevant times. The Town's memo of April 11, 1986, shows that its "4-2" and "5-3" work cycles are component parts of a fixed, recurring twenty-four day work period. Cf. Agawam, 350 F.3d at 291 (rejecting public employer's claim to the § 207(k) exemption when the employer used six-day work cycles and could "not point to

-14-

a single statement or document indicating that it adopted a work period longer than six days"). Both of these schedules are consistent with the identified work period, as both divide evenly into a twenty-four day period. See Avery, 24 F.3d at 1344 (holding that a "five days on, two days off duty cycle, repeated four times" constitutes a "valid twenty-eight day work period") (internal quotation marks omitted). Additional memoranda discussing the FLSA's imminent effective date and expressing the Town's intention to take advantage of the public safety exemption further support this conclusion.

Plaintiffs do not directly challenge the regulatory framework outlined above. They instead urge that a subsequent letter ruling by an administrator at the Department of Labor mandates a notice requirement and is entitled to deference by this court under Auer v. Robbins, 519 U.S. 452, 461 (1988), or Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). That argument was not properly presented to the district court and is waived. E.g., McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). We nonetheless address the claim to ensure clarity on this point of law, and we reject plaintiffs' assertion for three distinct reasons.

First, the administrator's letter ruling made no mention of a notice requirement. It said only that "[a]n employer must designate or otherwise objectively establish the work period . . .

-15-

and pay the affected employees in accordance with its provisions." Dep't of Labor Ltr. Rul. FLSA-1374 (Jan. 3, 1994). The letter's emphasis on "objectively establish[ing]" a work period is not inconsistent with 29 C.F.R. § 553.224. To the contrary, it merely paraphrases the regulation's requirement that employers make use of an "established and regularly recurring period of work," id. § 553.224(a), in order to claim the benefits of the exemption.[4]

Second, the letter responded to an inquiry regarding a specific decision by this court, Martin v. Coventry Fire Dist., 981 F.2d 1358 (1st Cir. 1992), which addressed different issues.[5] When responding to the inquiry, the administrator plainly stated that the letter ruling was "based exclusively on the facts and circumstances" presented. Dep't of Labor Ltr. Rul. FLSA-1374. The letter is irrelevant to plaintiffs' present argument.

---

[4] Plaintiffs' argument relies heavily on dicta in an Agawam footnote, in which we, too, paraphrased this requirement, observing that an employer must "announce and take bona fide steps to implement a qualifying work period." Agawam, 350 F.3d at 291 n.21. Plaintiffs assert this language implicitly mandated a notice requirement. Their reading is inconsistent with the text and history of § 207(k) and its implementing regulations, and does not reflect the standard we applied in Agawam.

[5] In Martin, we affirmed a district court's ruling that the fifty-three-hour workweek provided for firefighters by § 207(k) should be used to calculate damages for firefighters who had not been paid sufficient overtime. See 981 F.2d at 1359-62. There was no indication that the defendant municipal employer in Martin had not used a § 207(k)-compliant work period, nor did the Martin plaintiff so argue. See id. at 1359-60.

Finally, "[i]nterpretations such as those in opinion letters . . . do not warrant Chevron-style deference." Christensen v. Harris County, 529 U.S. 576, 587 (2000). To the contrary, such letters "are 'entitled to respect' . . . only to the extent that th[eir] interpretations have the 'power to persuade.'" Id. (quoting Skidmore, 323 U.S. at 140). Here, the Secretary of Labor explicitly rejected the very position that plaintiffs ascribe to the administrator's letter, stating clearly during rulemaking that employers need not formally declare their intentions to pay employees under § 207(k). 52 Fed. Reg. at 2024-25. Even if plaintiffs' reading of the letter were accurate, the letter's inconsistency with the Secretary's earlier pronouncement would render it unpersuasive. See Skidmore, 323 U.S. at 140.

Plaintiffs' argument fails. The Town was not required to notify plaintiffs that it had established a § 207(k) work period. Summary judgment was appropriately granted.

B.      The District Court Did Not Abuse Its Discretion by Denying Plaintiffs' Motion to Strike under Fed. R. Civ. P. 37(c)(1)

Plaintiffs also challenge the district court's denial of their motion to strike copies of the April 11, 1986, memorandum, as well as related evidence. We review for abuse of discretion. Poulis-Minott v. Smith, 388 F.3d 354, 357 (1st Cir. 2004).

Plaintiffs' primary claim is that the Town's failure to "provide detail as to several alleged locations" of the memorandum

-17-

in its August 2007 supplemental response to interrogatories merited sanction under Fed. R. Civ. P. 37(c)(1).  See id. ("If a party fails to provide information . . . the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.").

Plaintiffs' argument fails.  The Town provided plaintiffs a copy of the memo in January 2006, as part of its initial disclosure under Fed. R. Civ. P. 26.  The copies at issue are identical to that copy, except for nonsubstantive handwritten markings, some of which apparently indicate where each copy was on file.  The memo's recipients were identified on its face, and plaintiffs were free to probe the files of the relevant departments for additional copies through discovery or a public documents request.  Assuming arguendo that the Town was required to detail the location of various copies of the memo, the district court did not abuse its discretion by concluding that any omission was either substantially justified or harmless.  Plaintiffs' related evidentiary claims also fail.

## III.

The district court's grant of summary judgment is affirmed.