Present: Kinser, C.J., Lemons, Goodwyn, Millette, Mims, and McClanahan, JJ., and Russell, S.J.

BRANDI BAILEY, ET AL.

OPINION BY
v.    Record No. 131815    JUSTICE LEROY F. MILLETTE, JR.
September 12, 2014

LOUDOUN COUNTY SHERIFF'S
OFFICE, ET. AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Alfred D. Swersky, Judge Designate

In this appeal we consider whether the Virginia Gap Pay Act, Code § 9.1-700 et seq., prohibits three employment practices adopted to avoid paying law-enforcement employees at least at a one and one-half overtime rate for hours of work accrued in "the gap:" that is, hours of work more than the employees' regularly scheduled work hours but less than the federally established maximum limit after which an overtime rate must be paid. We also consider whether one such employment practice is prohibited by the law-enforcement employees' contractual employment rights.

I.    Facts and Proceedings

The Loudoun County Sheriff's Office receives funds from Loudoun County, pursuant to a cooperative agreement, and from the Commonwealth. To receive funds from Loudoun County, the Sheriff's Office agrees to be treated "as any other department" under Loudoun County's authority. The consequences of this arrangement are significant. The Sheriff acts both in his

county-affiliated capacity as a department head, and in his state-affiliated capacity as a constitutional officer. Also, Loudoun County approves the Sheriff's Office's budget and retains authority to dictate the Sheriff's Office's policies regarding its deputies' salaries, benefits, and overtime.

Loudoun County's Board of Supervisors, compelled by budget concerns, focused on limiting overtime compensation to reduce expenditures. To address the Sheriff's Office's use of overtime, the Board required the Sheriff's Office to implement three employment practices to reduce the hours that would be considered overtime. The Board also raised the number of hours constituting the deputies' regularly scheduled work hours.

These actions prompted the litigation giving rise to this appeal. The Sheriff's Office employed deputies who worked in the Adult Detention Center ("ADC Deputies") and deputies who worked on patrol ("Patrol Deputies"). The ADC Deputies and Patrol Deputies[1] brought an action under the Multiple Claimant Litigation Act, Code §§ 8.01-267.1 through -267.9, against

---

[1] The circuit court's October 17, 2012 consent order listed the Patrol Deputies as Ronald Beach, Wade Boyer, Aleksandra Kowalski, Brandi Bailey, Perry Bailey, Chad T. Braun, James Breeden, Joshua Colborn, Anthony Cooper, Shannon A. Warrick, Kevin F. Zaldua, Jamie D. Romba, Sarah A. Weaver, and James D. Spurlock, Jr.

Loudoun County,[2] the Sheriff's Office, and Sheriff Michael L. Chapman. The ADC Deputies alleged that the defendants violated both state and federal law by wrongfully calculating and underpaying overtime hours. Both the ADC Deputies and the Patrol Deputies alleged that the defendants engaged in employment practices to avoid paying overtime in violation of state law and the deputies' employment contracts.

After considering trial testimony and post-trial briefs, the circuit court issued a letter opinion resolving these claims. The circuit court (1) denied all requested injunctive relief, (2) awarded the ADC Deputies judgment in the amount of $107,451.00 together with prejudgment interest from February 1, 2011, and (3) denied the Patrol Deputies' claims and entered judgment in favor of the defendants on those claims. After the court denied the Patrol Deputies' motion for reconsideration, it entered a final order memorializing its letter opinion and also awarding costs and attorneys' fees.

The Patrol Deputies timely filed a petition for appeal with this Court. We granted the following assignments of error, each of which identifies an allegedly impermissible employment practice brought before the circuit court at trial:

---

[2] Loudoun County was dismissed from the suit before trial and is not a party to this appeal.

3

1. The Court wrongly held that the Sheriff did not violate Va. Code § 9.1-703 when he refused to pay [Patrol] Deputies overtime for all hours when the deput[ies were] in a "paid status," which violates the express language of [Code §] 9.1-703 and the policy created for the Sheriff by the County.

2. The Court wrongly held that the Sheriff could refuse to credit hours at the overtime rate to [Patrol] Deputies as compensatory time for hours over 80 and below 86 even though Va. Code § 9.1-701(A) expressly requires that the Sheriff do so.

3. The Court wrongly held that the Sheriff's practice of "force-flexing" hours (where the Sheriff forced [Patrol] Deputies without notice to go home and not work regularly scheduled hours that would put them past the overtime threshold) did not violate Va. Code § 9.1-703 and the Deputies' employment contracts.

## II.  Discussion

### A.   Standard of Review

Whether a statute prohibits employment practices is a mixed question of law and fact.  See Smyth County Cmty. Hosp. v. Town of Marion, 259 Va. 328, 336, 527 S.E.2d 401, 405 (2000).  "Therefore, while we give deference to the trial court's factual findings and view the facts in the light most favorable to the prevailing party, we review the trial court's application of the law to those facts de novo."  PS Business Parks, L.P. v. Deutsch & Gilden, Inc., 287 Va. 410, 417, 758 S.E.2d 508, 511 (2014) (internal quotation marks and alterations omitted).

4

We review issues of contract interpretation de novo. Schuiling v. Harris, 286 Va. 187, 192, 747 S.E.2d 833, 836 (2013).

B.   The Statutory Context of This Appeal

This appeal requires us to resolve issues of Virginia law. However, the relevant state law operates in tandem with federal law.  Because "we do not read statutes in isolation," and because "statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished," we first review the relevant statutory law to place the issues in this appeal within their appropriate legal context.  Sheppard v. Junes, 287 Va. 397, 403, 756 S.E.2d 409, 411 (2014) (internal quotation marks omitted).

1.   The Federal Fair Labor Standards Act

The United States Congress enacted the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., in 1938 and has since amended it on several occasions. "The principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours."  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981); see also 29 U.S.C. § 202(a).  To this end, "the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of [one and one-half] times the employees' regular wages."  Christopher v. SmithKline

5

Beecham Corp., 567 U.S. __, __, 132 S.Ct. 2156, 2162 (2012); see 29 U.S.C. § 207(a). This 40-hour overtime requirement applies to "employers," which includes any "government of a State or political subdivision thereof," "any agency of . . . a State," and any "political subdivision of a State," as each of those entities are a "public agency." 29 U.S.C. §§ 203(d), (x); 207(a).

However, this 40-hour overtime requirement is not absolute. For example, Congress provided numerous outright exemptions from the 40-hour overtime requirement. 29 U.S.C. § 213(a), (b); see, e.g., Christopher, 567 U.S. at __, 132 S.Ct. at 2158 (addressing the "outside salesman" exemption). But outright exemptions are not the only type of exception. The FLSA also establishes a "partial exemption" to the 40-hour overtime requirement for a "public agency" that is "engaged in . . . law enforcement activities." 29 U.S.C. § 207(k); Calvao v. Town of Framingham, 599 F.3d 10, 13 (1st Cir. 2010). A law-enforcement public agency is still required to pay its employees at a one and one-half overtime rate for overtime hours, but the hours-to-days ratio establishing what constitutes overtime hours is different from the 40-hour overtime requirement. Instead of the 40-hours-to-7-days ratio used to establish the general 40-hour overtime requirement, 29 U.S.C. § 207(a), a law-enforcement public agency is subject to

6

a larger hours-to-days ratio if the public agency uses a work period between 7 and 28 days. 29 U.S.C. § 207(k). Congress thus "set a higher threshold number of hours that [law-enforcement employees] can work in a [28] day work period — or a proportional number of hours in a shorter work period of at least [7] days — before these employees become entitled to overtime compensation." Calvao, 599 F.3d at 13.

The purpose of this partial exemption is well understood. "Congress incorporated [this] special provision[] concerning overtime pay for [law-enforcement employees] when it amended the FLSA in 1974 in order to take account of the special concerns of States and localities with respect to these positions." Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 554 n.17 (1985). This partial exemption "eases the burden of the FLSA's overtime provisions on state and local employers two ways." Calvao, 599 F.3d at 14. It not only "provides for higher hours standards before requiring the payment of overtime," but it also "permits overtime hours to be computed over a workweek that may be longer than a forty-hour workweek and that the employer selects." Id.; see also Avery v. City of Talladega, 24 F.3d 1337, 1344 (11th Cir. 1994) ("The work period concept was intended to ease the overtime burdens of certain public employers by allowing them to average their

employees' duty hours over the designated work period, from [7] to [28] days in length.").

Congress established the following hours-to-days ratio for this partial exemption: 216 hours for a 28 day work period. 29 U.S.C. § 207(k). However, Congress empowered the Secretary of Labor to promulgate a lower hours-to-days ratio. Id.; see also 29 C.F.R. § 553.201(a) (noting that the FLSA "mandated" a study on this point). And, in fact, the Secretary did promulgate a lower ratio for law-enforcement public agencies: 171 hours for a 28 day work period. 29 C.F.R. § 553.230(b). Recognizing that this ratio applies to every work period between 7 and 28 days, the Secretary provided a chart specifying how this ratio applies by listing the number of pre-overtime hours that may be worked in each work period before a one and one-half overtime rate must be paid. See 29 C.F.R. § 553.230(c). As relevant to this appeal, a 14 day work period has an 86 hour pre-overtime hour limit for law-enforcement employees. 29 C.F.R. § 553.230(c).

### 2. The Virginia Gap Pay Act

The Virginia Gap Pay Act (the "Act"), Code § 9.1-700 et seq., was enacted in 2001.[3] Although the Act originally applied

---

[3] The Act was enacted as Chapter 10.1:3 of Title 2.1 of the Code, but upon repeal of that portion of Title 2.1, the Act was codified in Chapter 7 of Title 9.1. 2001 Acts chs. 768, 844.

only to public employers of fire protection employees, the General Assembly amended the Act in 2005 to apply to public employers of law-enforcement employees.[4]  See 2005 Acts ch. 732.

It is clear that the General Assembly intended the Act to operate in conjunction with the FLSA.  The Act permits an employer to "adopt any work period to compute overtime compensation for . . . law-enforcement employees," so long as such a work period is "recurring and fixed" and "between [7] and 28 days."  Code § 9.1-702.  To this end, an employer of law-enforcement employees may seek the partial exemption to the 40-hour overtime requirement established by 29 U.S.C. § 207(k) and specified in 29 C.F.R. § 553.203(b) and (c).

More specifically, the Act is designed to solve a problem unaddressed by the FLSA.  The FLSA establishes a fixed number of pre-overtime hours that may be paid at a normal rate for any given work period.  However, an employer may establish a lower number of hours of work per work period that constitute the basis of the employee's salary or the employee's hourly compensation — that is, those hours which constitute the employee's regularly scheduled work hours.  See Code § 9.1-700.

---

[4] As used in the Act, "[e]mployer" means "any political subdivision of the Commonwealth."  Code § 9.01-700.  Further, with respect to employers of law-enforcement employees, the Act applies only if such an employer employs 100 or more law-enforcement employees.  Code §§ 9.1-701(C); 9.1-702; 9.1-703; 9.1-704(C).

This is "the gap:" the difference between an employee's regularly scheduled work hours and the federal pre-overtime hours limit.

The problem is that any hours of work accrued in the gap are "overtime," in the sense that those hours are work in excess of the hours used to determine the law-enforcement employee's regular pay, but federal law would not require a one and one-half overtime rate of pay for those hours because they do not exceed the pre-overtime hours established by 29 U.S.C. § 207(k) and specified in 29 C.F.R. § 553.203(b) and (c). To address this issue, the Act requires that:

> Employers shall pay . . . law-enforcement employees overtime compensation or leave, as under the Fair Labor Standards Act, 29 U.S.C. § 207(o), at a rate of not less than one and one-half times the employee's regular rate of pay for all hours of work between the statutory maximum permitted under 29 U.S.C. § 207(k) and the hours for which an employee receives his salary, or if paid on an hourly basis, the hours for which the employee receives hourly compensation.

Code § 9.1-701(A). As this statutory language is neither ambiguous nor absurd, we conclude that it means exactly what it says. Sheppard, 287 Va. at 403, 756 S.E.2d at 411. Thus, Code § 9.1-701(A) requires an employer of law-enforcement employees to pay such employees, in the form of either overtime compensation or leave, at a rate of at least one and one-half times their normal pay rate, for all hours of work that occur within a work period and that accrue within the gap.

10

C.    The Sheriff's Office's Employment Practices

The Sheriff's Office established a 14 day work period for its Patrol Deputies as permitted by Code § 9.1-702.  Under federal law, the Sheriff's Office is not required to pay the Patrol Deputies a one and one-half overtime rate for hours worked in a 14 day work period until the Patrol Deputies accrue hours of work in excess of 86 hours.  29 U.S.C. § 207(k); 29 C.F.R. § 553.203(b), (c).  But the Sheriff's Office established the Patrol Deputies' regularly scheduled work hours as 80.5 hours per work period, and then in early 2011 changed the Patrol Deputies' regularly scheduled work hours to 84 hours per work period.[5]  Thus, for the Patrol Deputies, the gap between actual overtime and the federally-imposed overtime was any hours of work accrued between 80.5 and 86 hours in a 14 day work period before early 2011, and any hours of work accrued between 84 and 86 hours in a 14 day work period after early 2011.

Pursuant to Loudoun County's direction, the Sheriff's Office implemented three employment practices to reduce

_____

[5] Trial testimony indicated that the change in the Patrol Deputies' regularly scheduled work hours occurred in either January or February 2011.  The circuit court did not make a factual finding on this point.  Because this appeal focuses on liability and further determination from the circuit court as to damages is required, we need not determine when exactly the Sheriff's Office changed the Patrol Deputies' regularly scheduled work hours from 80.5 hours to 84 hours.

overtime payments to the Patrol Deputies.  We find that the Act prohibits two of these employment practices but permits the third practice.  To the extent hours of work actually accrue in the gap, notwithstanding creative accounting practices, those hours must be paid at least at a one and one-half overtime rate.  But the Act neither requires payment for hours of work never actually accrued in the gap, nor mandates that an employee work according to a specific work schedule.

### 1.    The "Debiting Leave" Scheme

The "debiting leave" scheme is implicated when, within a single work period, a Patrol Deputy works overtime hours and takes sick leave.  Instead of acknowledging the accrual of both overtime hours and sick leave, the Sheriff's Office reduces and offsets the sick leave hours taken by the overtime hours worked.  Those offset sick leave hours are not "debited" from the Patrol Deputy's pool of accumulated sick leave, but instead remain on the books as sick leave not being taken.  The effect of this policy makes it appear as if the Patrol Deputy did not actually work some or all of his overtime hours in a work period, as the overtime hours which offset the sick leave hours simply look like regularly scheduled work hours in light of the sick leave hours not being acknowledged.

As for the offset sick leave hours which are taken but not acknowledged, the Sheriff's Office does not outright refuse to

12

pay for such hours. The Patrol Deputy can have those offset sick leave hours acknowledged in a subsequent work period, but only if such an acknowledgement would not put the Patrol Deputy over his regularly scheduled work hours for that subsequent work period. In other words, when those offset sick leave hours are acknowledged and compensated in a subsequent work period, they are paid at the Patrol Deputy's normal rate of pay, rather than at a one and one-half overtime rate.

We agree with the Patrol Deputies that the "debiting leave" scheme violates the Act. The Act requires at least a one and one-half overtime rate of pay for "all hours of work" that accrue within the gap. Code § 9.1-701(A). The word "all" is an "unrestrictive modifier[]" that "is generally considered to apply without limitation." Sussex Cmty. Servs. Ass'n v. Virginia Soc'y for Mentally Retarded Children, Inc., 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996). The plain language of Code § 9.1-701(A) does not counsel for a limited understanding of "all." Thus, if any "hours of work" accrue within the gap, they must be paid at least at a one and one-half overtime rate.

"Hours of work" is a term of art that the General Assembly defined for purposes of the Act: "all hours that an employee works or is in a paid status during his regularly scheduled work hours shall be counted as hours of work." Code § 9.1-703 (emphasis added). Sick leave hours are "hours" that are a

13

"paid status during [a Patrol Deputy's] regularly scheduled work hours" because those sick leave hours are paid hours, and are calculated as part of a Patrol Deputy's regularly scheduled work hours.  A Patrol Deputy's sick leave hours are therefore "hours of work."

We hold that the Sheriff's Office was required to pay the Patrol Deputies' offset sick leave hours at least at a one and one-half overtime rate because those offset sick leave hours were "hours of work" actually taken, and therefore accrued, within the gap.  Code §§ 9.1-701(A); 9.1-703.  The Sheriff's Office's "debiting leave" scheme is an accounting technique that violated the Act because the Sheriff's Office paid such offset sick leave hours at a rate less than one and one-half times the Patrol Deputies' normal rate of pay.

2.   The "Exchange Hours" Scheme

The "exchange hours" scheme is implicated when a Patrol Deputy works overtime hours during a particular work period. The Patrol Deputy has the option to voluntarily "exchange" his overtime hours which accrued in the gap for leave hours to be taken and paid at any later date.  However, when the exchanged overtime hours are paid out as leave, it is at a normal rate of pay rather than at a one and one-half overtime rate.

We agree with the Patrol Deputies that the "exchange hours" scheme violates the Act.  As already stated, the Act

14

requires at least a one and one-half overtime rate of pay for "all hours of work" that accrue within the gap. Code § 9.1-701(A). The term "hours of work" includes "all hours that an employee works." Code § 9.1-703. Because any hours actually worked during the gap are therefore "hours of work" that accrued within the gap, those hours must be paid out at least at a one and one-half overtime rate. Code § 9.1-701(A).

This is true even though the "exchange hours" scheme paid overtime hours in the form of leave rather than overtime compensation. The Act specifically allows for hours of work accrued within the gap to be paid out as either "overtime compensation or leave." Code § 9.1-701(A).

The term "overtime compensation" in Code § 9.1-701(A) is undefined, and accordingly we give that term its "ordinary meaning, in light of the context in which [it is] used." Virginia Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 384, 757 S.E.2d 1, 8 (2014) (internal quotation marks omitted). The term "overtime compensation" refers to "extra wages paid for excess hours worked." Black's Law Dictionary 1279 (10th ed. 2014). This is the typical payment of overtime hours which compensates the employee for overtime hours as having been worked in the work period in which they accrue. The exchanged overtime hours were not paid as overtime compensation.

15

The term "leave" in Code § 9.1-701(A) is defined by the reference to 29 U.S.C. § 207(o), which in turn governs "compensatory time off." The term "compensatory time off" refers to "hours during which an employee is not working, which are not counted as hours worked during the applicable workweek or other work period for purposes of overtime compensation, and for which the employee is compensated at the employee's regular rate." 29 U.S.C. § 207(o)(7)(A). It is clear that the exchanged overtime hours were categorized as "compensatory time off" under the "exchange hours" scheme. When the exchanged overtime hours were subject to the "exchange hours" scheme, a Patrol Deputy would not work during such hours, the hours were not calculated as part of the Patrol Deputy's regularly scheduled hours and were not considered for purposes of overtime compensation, and the hours were compensated at a regular rate of pay. See 29 U.S.C. § 207(o)(7)(A). The "exchange hours" scheme therefore paid the exchanged overtime hours as leave, rather than as overtime compensation. But the Act requires both forms of payment to be compensated at least at a one and one-half overtime rate. Code § 9.1-701(A).

We hold that, although the Sheriff's Office could permissibly pay overtime hours as leave rather than as overtime compensation, the Sheriff's Office was required to pay the Patrol Deputies' exchanged overtime hours at least at a one and

16

one-half overtime rate because those exchanged overtime hours were "hours of work" actually worked, and therefore accrued, within the gap.  Code §§ 9.1-701(A); 9.1-703.  The Sheriff's Office's "exchange hours" scheme violated the Act because the Sheriff's Office paid such exchanged overtime hours as leave at a rate less than one and one-half times the Patrol Deputies' normal rate of pay.[6]

### 3.  The "Force Flexing" Scheme

The "force flexing" scheme is implemented when a Patrol Deputy accrues hours in addition to his regularly scheduled work hours such as through overtime work or a holiday.  Then, later in the same work period, to avoid paying overtime, the Sheriff's Office prohibits the Patrol Deputy from working his full scheduled shift and sends the Patrol Deputy home before the deputy can accrue sufficient hours to earn overtime.

### a.  The Patrol Deputies' Statutory Challenge

The Patrol Deputies make three statutory arguments as to why the "force flexing" scheme violates the Act.  None are

---

[6] In opposing the Patrol Deputies' petition for appeal, the Sheriff's Office argued that we could not reach this issue because the "exchange time" scheme was not properly before the circuit court as it had not been alleged in the pleadings.  We disagree.  Count III of the amended complaint alleged as impermissible the Sheriff's Office use of "'flex-scheduling' procedures."  During opening arguments, the Patrol Deputies' counsel explained to the circuit court that Count III pertained to "three subcategories of flexible scheduling," including the "exchange time" scheme.

persuasive, and we agree with the Sheriff's Office that the "force flexing" scheme is permissible under the Act. We note at the outset that the "force flexing" scheme does not implicate the problem the Act was enacted to address: hours of work being accrued within the gap, but paid out at less than a one and one-half overtime rate. The "force flexing" scheme merely stops the Patrol Deputies from accruing more hours than the number of their regularly scheduled work hours in a work period.

First, the Patrol Deputies argue that an employer cannot alter an employee's work schedule by not allowing that employee to work all of his "regularly scheduled work hours." The General Assembly defines "[r]egularly scheduled work hours [as] those hours that are recurring and fixed within the work period and for which an employee receives a salary or hourly compensation." Code § 9.1-700. The Patrol Deputies attribute to the term "regularly scheduled work hours" an impact not borne out by the plain language of the Act. The term "regularly scheduled work hours" operates to determine when an employee's hours qualify as "hours of work" for purposes of overtime under the Act. Code § 9.1-703. "Hours of work" constitute (1) all hours that an employee actually works, regardless of whether such hours are regularly scheduled or not, and (2) hours that the employee is in a paid status during

18

his regularly scheduled work hours, but not (3) hours that the employee is in a paid status during "on-call, extra duty assignments[,] or any other nonrecurring and nonfixed hours," as those hours are not regularly scheduled work hours. Code §§ 9.1-700; 9.1-703. Reading these provisions together, no basis exists to hold that the term "regularly scheduled work hours" restricts an employer's ability to alter a work schedule such that an employee does not work all of his or her regularly scheduled work hours in any given work period.

Second, the Patrol Deputies argue that the Act's prohibition against an employer changing a work period "for purposes of denying overtime compensation to [law-enforcement] employees to which they may be entitled under subsection A of [Code] § 9.1-701," Code § 9.1-702, also prohibits an employer from changing the Patrol Deputies' work schedule within a work period for similar reasons. This argument can be sustained only if we fundamentally redefine "work period." A work period is merely a period of time "between [7] and 28 days" during which an employee's hours of work are calculated for overtime purposes. Code § 9.1-702; see 29 U.S.C. § 207(a), (k). Although we liberally construe remedial statutes, this principle of construction does not permit us to deviate from plain and unambiguous statutory language. Greenberg v. Commonwealth ex rel. Attorney General of Va., 255 Va. 594, 600.

19

499 S.E.2d 266, 269 (1998).  We therefore disagree with the Patrol Deputies' definition of a "work period" as including the days and times an employee is scheduled to work his regularly scheduled work hours during a work period.

Third, the Patrol Deputies invoke the purpose of the Act and argue that the Act was intended to prohibit employment practices, such as the "force flexing" scheme, whose "sole purpose [is] to perpetuate the pre-statutory wage scale." Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 41 (1944).  In light of the Act's specialized operation in conjunction with the FLSA, we do not ascribe such a broad purpose to the Act. In any event, "the General Assembly's intent is usually self-evident from the statutory language" itself, and we find this principle to hold true with the Act.  Sheppard, 287 Va. at 403, 756 S.E.2d at 411 (internal quotation marks omitted).  Had the General Assembly intended the Act to prohibit an employer from refusing to allow an employee to work his scheduled hours, when such a refusal only ensures that the employer would not pay overtime under the Act, it would have created a statutory provision clearly aimed at such a practice.  It did not.  We decline to interpret the Act to achieve that policy goal.  See Wood v. Board of Supervisors, 236 Va. 104, 115, 372 S.E.2d 611, 618 (1988) ("[I]t is the responsibility of the legislature, not the judiciary, to formulate public policy, to strike the

20

appropriate balance between competing interests, and to devise standards for implementation.").

We hold that the Sheriff's Office was neither required to pay hours of work that did not accrue within the gap at least at a one and one-half overtime rate, nor prohibited from altering a Patrol Deputy's work schedule within a work period. Code §§ 9.1-701(A); 9.1-702. The Sheriff's Office's "force flexing" scheme did not violate the Act.

b.    The Patrol Deputies' Contract Challenge

The Patrol Deputies contend that the Loudoun County Human Resources Handbook of Personnel Policies and Procedures (the "Human Resources Handbook") vested the Patrol Deputies with contractual rights as part of their employment with the Sheriff's Office, and that the "force flexing" scheme violated those rights. "In Virginia, an employment relationship is presumed to be at-will, which means that the employment term extends for an indefinite period and may be terminated by the employer or employee for any reason upon reasonable notice." Cave Hill Corp. v. Hiers, 264 Va. 640, 645, 570 S.E.2d 790, 793 (2002). "Many of the provisions customarily included in an employee handbook are consistent with an at[-]will employment relationship such as policies regarding vacations, severance pay, or employee grievance procedures." Progress Printing Co. v. Nichols, 244 Va. 337, 340, 421 S.E.2d 428, 430 (1992).

21

"Normally, the employer retains the right to alter these policies at any time, although rights which have already vested in the employee are enforceable for the period of time during which those rights existed."  Id. at 340-41, 421 S.E.2d at 430.

We agree with the Sheriff's Office that the "force flexing" scheme did not violate the Patrol Deputies' contractual employment rights.  Reviewing the relevant provisions of the Human Resources Handbook makes this clear.

Section 4.2.02 of the Human Resources Handbook, titled "Authorized Workweeks and Work Hours," reads:

> (B) Supervisors will schedule sufficient staff to provide services during County business hours or other designated service hours.  To ensure that sufficient staff are available to meet service needs, supervisors have the authority to temporarily or permanently adjust employees' work hours or locations, as long as the adjustment does not exceed the position's authorized workweek hours and a reasonable amount of time is afforded the employee to accommodate the adjustment.

In relevant part, this provision prohibits an adjustment in a Patrol Deputy's work hours if no "reasonable amount of time" is provided "to accommodate the adjustment."

The Patrol Deputies failed to show at trial that the "force flexing" scheme violated this prohibition.  The Patrol Deputies failed to present sufficient evidence that the "force flexing" scheme, as a general matter, involved unreasonable amounts of time for a Patrol Deputy to accommodate to a work

22

hours adjustment.  And the Patrol Deputies recounted only one specific instance of the "force flexing" scheme, when Deputy Anthony David Cooper was told upon arriving at work that he would "have to go home two hours after leaving roll call."  The circuit court did not err in finding that a two hour notice of being sent home early, although perhaps frustrating and inconvenient for the employee, is not a breach of contract by constituting an unreasonable amount of time for that employee to "accommodate" the truncated work shift.

Section 4.2.03 of the Human Resources Handbook, titled "Flexible Scheduling," reads:

> (A) The County supports flexible scheduling arrangements when they can be accommodated as long as sufficient staff are available to meet service needs. Flexible scheduling of work hours is arranged between an employee and supervisor with the Department Head's approval[,] providing that:
>
> (1) employees continue to work their authorized number of hours during their normal pay workweek (Thursday through Wednesday);
>
> (2) each separate work period is structured below FLSA overtime levels; and
>
> (3) all of the department or program's business hours are covered adequately and the provision of services to the public is not adversely affected.

In relevant part, this provision allows flexible scheduling of work hours when "arranged" between the employee and supervisor and with the "approval" of the department head.

23

The Patrol Deputies failed to show at trial that the "force flexing" scheme did not satisfy these requirements. Testimony established that the "force flexing" scheme involved a Patrol Deputy being told by his supervisor that his schedule was going to be shortened, and that such flexing of hours was done with the Sheriff's approval, who was the department head. Although such scheduling was mandatory, whereby a Patrol Deputy could not opt out of the altered work hours, the flexed schedule was nonetheless "arranged" between the Patrol Deputy and his supervisor and done with the "approval" of the Sheriff.

We hold that the Human Resources Handbook did not prohibit the Sheriff's Office from altering the Patrol Deputies' work schedules in the manner testified to at trial. The "force flexing" scheme did not violate the Patrol Deputies' contractual employment rights.

D.  Damages for the Sheriff's Office's Violations of the Act

While preserving the sovereign immunity of the Commonwealth and any agency as defined in Code § 8.01-195.2, the General Assembly created a right of action for a law-enforcement employee against "an employer who violates [the Act]." Code §§ 9.1-704(A); 9.1-706. If successful, the law-enforcement employee is entitled to "an amount of double the amount of the unpaid compensation due," unless "the employer can prove that his violation was in good faith," in which case

24

the employer "shall be liable only for the amount of the unpaid compensation plus interest at the rate of eight percent per year, commencing on the date the compensation was due to the employee." Code § 9.1-704(A). If the law-enforcement employee prevails, he is also entitled to "attorneys' fees and costs to be paid by the employer." Code § 9.1-704(B). Finally, a law-enforcement employee can recover unpaid compensation only for the two years prior to bringing suit, unless the employee can prove that "the violation [of the Act] is willful," in which case the employee can recover unpaid compensation for the three years prior to bringing suit. Code § 9.1-705.

On appeal, the parties dispute the amount of damages the Patrol Deputies should be awarded pursuant to the Sheriff's Office's violations of the Act. These arguments are premature. With respect to the Patrol Deputies, the circuit court ruled only on the Sheriff's Office's liability. Holding the Sheriff's Office not liable, the circuit court necessarily did not address damages, which is an issue logically and legally distinct from liability. See Ford Motor Co. v. Bartholomew, 224 Va. 421, 434, 297 S.E.2d 675, 681 (1982). Because "we are a court of review, not of first view," the lower court must rule on this outstanding issue before we address the point. Cutter v. Wilkinson, 544 U.S. 709, 718 n.7 (2005); see Rule 5:25; see, e.g., Virginia Marine, 287 Va. at 390, 757 S.E.2d at

25

11.  We will therefore remand this case to the circuit court for a disposition expressly resolving the outstanding issue of the Patrol Deputies' damages.  Ash v. All Star Lawn & Pest Control, Inc., 256 Va. 520, 526, 506 S.E.2d 540, 543 (1998).

In light of the parties' arguments before us, we make clear that it is unnecessary to mandate a particular form of proceedings on remand.  Although we will order a new trial on damages when the outstanding issue of damages remains to be decided by a jury, see, e.g., Stubbs v. Parker, 169 Va. 676, 683, 192 S.E. 820, 822 (1938), we find no need for such action when, as here, the plaintiffs waived their right to a jury and evidence was presented to the court during a bench trial.  A circuit court, having heard evidence pertaining to damages while sitting as fact finder, can exercise its discretion to determine whether additional evidence is necessary in order to make a proper "determination of damages."[7]  Lower Chesapeake Assocs. v. Valley Forge Ins. Co., 260 Va. 77, 81-82, 89, 532

---

[7] Because the fact finder's ability to competently award damages has not been called into question, we need not decide whether our cases in which we remanded an appeal for a new jury trial on damages compels us to remand for a new bench trial on damages.  See, e.g., Velocity Express Mid-Atlantic, Inc. v. Hugen, 266 Va. 188, 203, 585 S.E.2d 557, 566 (2003) (new trial on damages when an assigned error pertained to an aspect of the trial which prejudiced only the damages calculation); Spainhour v. B. Aubrey Huffman & Assocs., Ltd., 237 Va. 340, 345-47, 377 S.E.2d 615, 619-20 (1989) (new trial on damages when the circuit court's error precluded the prejudiced party from presenting evidence pertaining to damages).

S.E.2d 325, 328, 332 (2000); see Yarbrough v. Commonwealth, 258 Va. 347, 361, 519 S.E.2d 602, 608 (1999) (recognizing that a circuit court has "inherent [judicial] authority to administer cases on its docket").  As the nature of the proceedings on remand is compelled neither by statute, see, e.g., PS Business Parks, 287 Va. at 420-22, 758 S.E.2d at 513-14, nor by our holding on appeal, we leave to the circuit court's sound discretion to take appropriate action to ensure that it is best able to resolve the outstanding issue of damages while sitting as fact finder.

## III. Conclusion

For the aforementioned reasons, we hold that the "debiting leave" scheme and "exchange hours" scheme violated the Act.  We further hold that the "force flexing" scheme neither violated the Act nor violated the Patrol Deputies' contractual employment rights.  We will reverse the circuit court's judgment to the extent it held otherwise, and remand the case back to that court for further proceedings in accordance with this opinion.

Affirmed in part,
reversed in part,
and remanded.

27